## Reed *v.* Saint Paul Fire & Marine Insurance Co., Appellant.

*Insurance—Fire insurance—Mortgage clause—Apportionment.*

Where an owner has insured his interest in a property by a policy of fire insurance to which is attached a mortgage clause, and subsequently sells his interest in the property to another person, subject to the mortgage, and such other person insures the property in a second insurance company, and has placed upon the policy a like mortgage clause in favor of the same mortgagee, and there is no reference either expressly or by implication in the mortgage clause to the apportionment clause contained in the policy, the second insurance company in an action against it by the mortgagee cannot compel the latter to accept in full settlement only one-half of the mortgage debt.

Argued March 7, 1917. Appeal, No. 48, March T., 1917, by defendant, from order of C. P. Luzerne Co., Oct. T., 1916, No. 1676, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Charles Reed v. Saint Paul Fire & Marine Insurance Company of Saint Paul, Minnesota. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit upon a policy of fire insurance.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that two suits were brought against the defendant company, one by Charles Reed, the mortgagee of the property, and the second by Alexander Buzitski, owner. The defendant filed affidavits of defense in both suits.

FULLER, P. J., filed the following opinion:

These two actions are based upon the same policy of fire insurance, the first by a mortgagee, the second by the owner of the insured property, and as the affidavits of

defense by mutual reference practically constitute one affidavit, we may dispose of the two by one opinion.

The policy bears date October 21, 1914, and insures for the amount of $1,400 during the term of three years.

The defendant admits a loss by fire November 15, 1914, amounting to not more than $1,528.79, but asserts liability and makes tender for only half of this amount, $764.39, on account of other insurance for like amount at the same time under a policy likewise marked to the use of the same mortgagee as his interest may appear, in the National Fire Insurance Company of Hartford, this claim of proportionate liability being based upon the following standard covenant in each policy, viz:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance whether valid or not or by solvent or insolvent insurers, covering such property."

Against this defense one objection urged by plaintiff in each case is, that the affidavit does not contain a copy of the other policy, nor any averment showing that the insured in each was the same person.

This objection we overrule because the other policy was not within the custody or control of the defendant and because the plaintiff has supplied the omission by furnishing a copy which shows other insurance, bearing date May 21, 1913, in the National Fire Insurance Company of Hartford, in the name of Joseph Bucycki, then owner, on the same property, for the same amount, during the term of three years, with loss payable to the same mortgagee as his interest may appear.

The plaintiff then, in each case, urges as a fatal objection to the defense, that the other policy being in the name of another person does not legally constitute double insurance as defined by authority, and, therefore, does not establish the defendant's right to appoint.

It was further suggested in the argument, although the

fact is not stated anywhere upon the record, that Joseph
Bucycki, the person insured by the other policy, avoided
the latter by conveying the property to the plaintiff,
Alexander Buzitski, in No. 93, November Term, 1915,
owner at the time of the fire, and that therefore it cannot
be considered.

We are led to the following conclusions;

1. In the suit of Alexander Buzitski, the owner, No.
93, November Term, 1915, the rule for judgment must be
refused because regardless of the other policy, the policy
in suit is expressly made payable to a mortgagee, namely,
Dr. Charles Reed, the plaintiff in No. 1676, October
Term, 1915, whose interest as averred in his statement,
$1,308.60, practically consumes the entire amount.

2. In the suit by the mortgagee, No. 1676, October
Term, 1915, the plaintiff is protected by the form of the
mortgagee clause against alienation of the property by
the insured owner, so that notwithstanding the change of
ownership in the present case the first policy might still
be enforced in favor of the mortgagee, and indeed it was
suggested in the argument, although this fact also is not
stated anywhere upon the record, that this mortgagee
has brought suit accordingly against the National Com-
pany, thus asserting his validity of the first policy.

We may observe also that the right of appointment
under the covenant is expressly declared to be inde-
pendent of validity or collectibility of the other insur-
ance.

Now if the same mortgage debt were involved in both
policies, with the mortgagee asserting liability and seek-
ing collection in each, it would be difficult to resist the
conclusion of double insurance, subject to apportion-
ment.

On the other hand, if the same mortgage debt was not
involved, if, in other words, Joseph Bucycki when owner
gave a mortgage to Dr. Charles Reed for one debt, accom-
panied by a policy in the National Company, and after-
wards conveyed the property, subject to that mortgage,

to Alexander Buzitski, who gave another mortgage for another debt, accompanied by policy in the St. Paul Fire and Marine Insurance Company, the conclusion of double insurance, subject to apportionment, might be plausibly combated.

On this analysis of the situation the burden of proof would rest upon the defendant to show that the mortgage debt was the same in each policy and hence the fact, if it be a fact, should be averred, but is not averred, in the affidavit of defense.

We, therefore, suggest, in order that we may more satisfactorily pass upon the usual question here involved, that a supplemental affidavit be filed with explicit averments stating the whole situation, viz: that the first policy was taken out in the name of Joseph Bucycki, then owner, and made payable under a regular mortgage clause, to Dr. Charles Reed, mortgagee, as his interest may appear, that Joseph Bucycki then conveyed the property to Alexander Buzitski, who then assumed the mortgage or gave a new mortgage for the same debt or gave a new mortgage for a new debt, or otherwise, as the facts may be, and that the mortgagee is asserting validity of the first policy in a pending suit; so that nothing material or possibly material will be left to intendment.

If this be not done within twenty days after notice hereof, we will probably incline to make the rule absolute, but if it be done, within that period, we will bestow upon the rule further consideration and deliver our ultimatum in light of all the pertinent facts.

The rule in No. 93, November Term, 1915, is discharged.

The rule in No. 1676, October Term, 1915, is held under advisement pending compliance with the above suggestion.

Subsequently the court filed a second opinion as follows:

In our decision on exceptions to the original affidavit of defense, we suggested in order to pass more satisfac-

torily upon the unusual question involved, "that a supplemental affidavit be filed with explicit averments stating the whole situation, viz: that the first policy was taken out in the name of Joseph Bucycki, then owner and made payable under a regular mortgage clause to Dr. Charles Reed, Mortgagee, as his interest may appear, that Joseph Bucycki then conveyed the property to Alexander Buzitski, who then assumed the mortgage or gave a new mortgage for the same debt, or gave a new mortgage for a new debt, or otherwise as the facts may be, and that the mortgagee is asserting validity of the first policy in a pending suit; so that nothing material or possibly material will be left to intendment"; and accordingly we have held the matter under advisement pending compliance with the above suggestion.

The supplemental affidavit complies with the suggestion, but plaintiff still excepts on the contention that the provision for apportionment does not affect the mortgagee clause on which he stands.

The facts of record as they now appear in the statement and supplemental affidavit of defense, are these:

1. On May 21, 1913, Joseph Bucycki, who was then the owner of the insured property, took out thereon a standard policy for $1,400 in the National Fire Insurance Company of Hartford, Connecticut.

This plaintiff held a mortgage on the property for $1,200 and received the policy to which was attached the standard union mortgagee clause, to wit: "Loss if any under the policy shall be payable to Dr. Charles Reed as mortgagee as interest may appear, and this insurance as to the interest of the mortgagee only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by change in the title or ownership of the property, etc.,......provided that the mortgagee shall notify this company of any change of occupancy or increase of hazard which shall come to the knowledge of said mortgagee, and unless permitted by this policy it shall be noted

thereon and the mortgagee shall on demand pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

The policy itself contained, inter alia, these provisions:

(a) "This entire policy unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not on property covered in whole or in part by this policy."

(b) "If with the consent of this company an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

(c) "This company shall not be liable under this policy for a greater proportion of any loss on the described property, etc., than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers covering such property";

2. Afterwards the said Joseph Bucycki conveyed the property subject to said mortgage, to Alexander Buzitski, who assumed its payment, and on October 21, 1914, took out the standard policy in suit, for $1,400, containing similar provisions, in the defendant company, and delivered the same, with attachment of like mortgagee clause, to the plaintiff, as security for that mortgage.

The former policy was not surrendered for cancellation but was retained by the mortgagee.

It does not appear whether or not the latter notified the National Fire Insurance Company of the change in title.

3. On November 15, 1914, during the term of both policies, the property was burned, entailing a loss of

$1,528.79, one-half of which the defendant in its affidavit offers to pay, but it claims exemption from the other half under the clause for apportionment above quoted.

4. The plaintiff after.bringing this action brought another, which is now pending, against the said National Fire Insurance Company, on the first policy; and the present owner, Alexander Buzitski, has also brought his separate action against this defendant on the second policy.

The question is, whether the above recited covenants and circumstances entitle the defendant insurer to apportionment against the plaintiff mortgagee.

It is clear that the defendant cannot claim, and indeed does not claim, entire avoidance of the policy under the covenant that "this entire policy shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not"; for by the "insured" in that connection must be meant the present owner, who has not made or procured any other contract of insurance.

The defendant, therefore, undertakes to stand, and can only stand, upon the covenant for apportionment, viz: that the company "shall not be liable for any greater portion of any loss than the amount hereby insured shall bear to the whole insurance, etc.," and since the amount insured by it is only one-half of the whole insurance under the two policies, it asserts a corresponding limitation of liability.

Sundry considerations are urged against such apportionment.

1. One consideration is that by taking out the second policy to insure the present owner after conveyance by the former owner, it was in fact intended to abandon the first policy and substitute the second, thus destroying the concurrence.

In our mind, however, while we think that such in fact was the intention, it is not sustained on the record by any

positive averment, and is in fact negatived by the plaintiff's action upon the first policy.

If it appeared that the mortgagee had failed to give notice of the change in title, the inference of abandonment would be strongly fortified, but by bringing suit thereon he is asserting so far as he is concerned, continued validity.

We may observe in this connection that as to the owner of course the first policy was expressly avoided by the change, and even as to the mortgagee it may be avoided if he did not give notice of that change, but by the express terms of the covenant in question the validity or invalidity of the prior insurance is made immaterial.

2. Another consideration is that the apportionment clause does not affect a mortgagee protected by a mortgagee clause of this character, commonly called the "union mortgagee clause," which is claimed to create a new and independent contract between the mortgagee and the insurer, as distinguished from an assignment of the policy or a mere endorsement of "loss payable as interest may appear."

The weight of authority seems to establish the proposition, as laid down in Syndicate Insurance Company of Minneapolis v. Bohn, 27 L. R. A. 614, at page 621, that "the effect of the union mortgagee clause when attached to a policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgagee clause."

This means that the mortgagee really insures his own interest, subject only to such conditions as are expressly or by implication incorporated in the mortgagee clause,

and is not affected by any unknown act or neglect of the mortgagor.

In accordance with this proposition it was held for example, in Hastings v. West Chester Fire Insurance Company, 73 N. Y. 141, that where an owner took out a policy with a mortgagee clause attached in favor of the plaintiff, and at the time had prior insurance without the knowledge of the plaintiff or defendant, the mortgagee plaintiff was not affected as he had not procured the other insurance and was ignorant thereof; and again it was held, in Hardy v. Lancashire Fire Insurance Company, 44 N. E. 209, that where the owner procured subsequent other insurance without knowledge of the plaintiff mortgagee, the latter could not be affected.

But in this case at bar both policies were taken with the knowledge and assent, if not by the actual procurement of the mortgagee for whose benefit the mortgagee clause was attached to both.

If, therefore, the effect of the mortgagee clause be an insurance of the mortgagee's interest, and if he has received insurance of that interest by two policies, it would be difficult to resist in this case the conclusion of double insurance subject to apportionment, unless the apportionment condition on a fair construction of the contract, in the light of all the circumstances ought to be held as excluded from the mortgagee clause.

It is not expressly included, and therefore its inclusion must depend entirely upon implication.

One source of implication might be the covenant above quoted: "If with the consent of this company an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

This is an awkward and ambiguous expression of the idea that the mortgagee clause is not subject to any condition "hereinbefore contained" unless such condition be written upon or attached to that clause.

It does not necessarily imply, however, that the mortgagee clause must be considered subject to conditions "thereinafter contained."

The apportionment condition is not "hereinbefore contained," and so it is argued by implication that the condition affects the mortgagee although not "written upon, attached or appended thereto"; but the argument is not persuasive against the general proposition of an independent contract, and against the case of Queen Insurance Company v. Dearborn Savings, Etc., Association, 51 North Eastern Reporter, page 717.

In that case, on a contract similar in all respects with the one at bar, certain conditions requiring proof within sixty days and suit within twelve months, not "hereinbefore contained" but thereinafter contained, were held inapplicable to the mortgagee, and the court, with citation of authority, declared "that there existed between the appellant insurance company and the appellee, the mortgagee of the insured property, a contract of insurance distinct from that which existed between the company and the owner, is not and cannot be questioned"; and then, after quoting the covenant just above quoted, said concerning the same: "The meaning of this clause is, as we understand it, that in case a mortgagee clause is added, the contract with the mortgagee shall include only such conditions as appear in such mortgagee clause or slip. The language of the policy particularly in determining whether the liability is limited is always to be strictly construed against the insurer.......The mortgagee slip in this case contains no such conditions as are claimed by the defendant. Had it been desired to impose the obligation on the mortgagee to make proof of loss, that requirement should have been inserted in the conditions applicable to the mortgage. What we have said

applies equally to the limitation as to bringing suit within twelve months. The conditions in the body of the policy by virtue of the clause above cited are applicable solely to the insured as distinguished from the mortgagee."

We cannot derive implication from that source.

One other source of implication might be the underlying purpose and principle of the apportionment condition, namely, to diminish for the insurer the moral hazard of the insurance by diminishing the pecuniary advantage to the insured of a voluntary loss.

But this does not apply to a mortgagee.

If an owner takes out several policies, the expectation of collection in full on all of them might create a temptation in his mind to cause a fire, if not deterred by a condition for apportionment which would restrict total collection to actual loss.

But no such expectation or temptation would operate on the mind of a mortgagee who could only collect at most or in any event the amount of his encumbrance.

We are, therefore, led to the conclusion, and we decide, that the apportionment condition is not incorporated in the contract between the mortgagee and the insurer, and would not affect the former even if both policies were concurrent in one ownership, much less when, as in the present case, there has been a change of title.

By failure to notify the first company of that change, a perfectly natural oversight, this mortgagee may have lost all recourse to the first policy, and yet by this apportionment condition be limited to half his encumbrance, possibly entailing upon him an unjust loss.

This insurer, by paying the full amount of the loss to the extent of the mortgage, on this suit by the mortgagee, is only doing what it expected to do when it issued the policy, and cannot possibly be injured thereby because it must be credited pro tanto in the suit by the owner, against whom it cannot defend on the ground of other in-

surance but only on the ground of payment to the mortgagee.

From every possible point of view, legal and equitable, we conclude that the defendant ought to pay the mortgage.

Accordingly the rule is made absolute and judgment is now entered for the amount claimed, viz: $1,308.60, with interest from November 15, 1914, which amounts to less than the gross amount now payable on the policy and will be credited on the same in the suit by the owner.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*Reese H. Harris* and *Charles B. Lenahan,* with them *Robert J. Murray,* for appellant.

*Arthur S. Arnold,* with him *E. J. Moore* and *W. Alfred Valentine,* for appellee.

PER CURIAM, July 13, 1917:

After careful examination of the record in this case, we conclude that the reasons given by the court below fully justify the conclusion reached, and that from every possible point of view, legal and equitable, the defendant ought to pay the mortgage; and that the rule to show cause why judgment should not be entered for want of a sufficient affidavit of defense was properly made absolute.

The judgment is affirmed.