Overholt et ux. *v.* Reliance Insurance Company of Philadelphia, Appellant, et al.

Argued April 23, 1935. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Arthur S. Arnold,* for appellant.

*W. T. Connor,* with him *John R. K. Scott,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 29, 1935:

This is a bill in equity to reform a policy of fire insurance. In January, 1928, the plaintiffs sold to one Dora Cohen certain premises near Doylestown, taking in part payment therefor a purchase-money mortgage containing the usual provision for the maintenance by the mort-

342

gagor of fire insurance to the amount of the mortgage. On the following day defendant insurance company issued to Dora Cohen through its Doylestown agent, Hendricks, a policy of fire insurance insuring for one year and for a sum in excess of the mortgage, the two buildings erected on this property. This policy contained the so-called standard mortgage clause, in favor of plaintiffs, and was delivered to plaintiffs. In subsequent years as the policy was about to expire, Hendricks sent notice of that fact to Mrs. Cohen, inquiring whether the insurance was to be renewed. The business affairs of Dora Cohen were handled by her daughter, Rose Ashner, who, on receiving these notices, instructed Hendricks by letter to renew the policy, enclosing a check for the amount of the premium. Hendricks then directed defendant to renew the insurance, and when he received the new policy from the company he sent it to plaintiffs. In December, 1931, one of the buildings insured was destroyed by fire, and upon subsequently examining the current policy plaintiffs discovered for the first time that it did not contain a standard mortgage clause but merely had a provision inserted that "loss, if any, payable to Erwin Overholt and Susanna Overholt, as their interests may appear." Hendricks was likewise ignorant of the change in the policy until it was called to his attention, inasmuch as he had forwarded the policies to plaintiffs without reading them, and had received no notice from the company of any change therein. The basic difference in effect between a loss-payable clause and a standard mortgage clause is that the former is subject to such defenses as the insurer may have against the mortgagor, while the latter is not. The prayer of plaintiffs' bill is that the policy in effect at the time of the fire be reformed so as to include a standard mortgage clause instead of the simple loss-payable clause which it now contains.

At the trial it was disclosed that in August, 1929, Dora Cohen had conveyed the property in question to her daughter. The latter, however, testified that the prop-

erty still belonged to her mother, but that it was "put in my name for protection" against possible liability to a building and loan association in connection with the foreclosure by the association of a mortgage upon another property owned by Mrs. Cohen. On this testimony the chancellor found *as a fact* that Dora Cohen had remained the real owner of the property, and, the other facts appearing as stated above, entered a decree of reformation in accord with the prayer of plaintiffs' bill. The insurance company appealed.

To the original bill of complaint, the insurance company filed preliminary objections, in which, inter alia, it was objected that Dora Cohen was not made a party to the proceeding. Plaintiffs accordingly moved to amend their bill so as to join her as a party defendant. This motion was granted against the objection of the insurance company. The company now contends that this was error, and that Mrs. Cohen should have been added as a party *plaintiff*. "Her place on the record," appellant says, "and as the case developed the factual issue is with the plaintiff." This is unimportant; since she is not the real party in interest in this case, the addition of her name as a party is but a formal matter, and it is well settled that mere formal amendments may be made at any stage of a proceeding. As we said in M. E. Church of Franklin v. Equitable Surety Co., 269 Pa. 411, 415, 112 A. 551, "We have repeatedly held that if the suit is brought, either by mistake of law or of fact, in the name of the party beneficially interested, instead of by the contracting party to the use of the former, the record may be amended, or treated as amended, in the appellate court, so as to conform to the requirement of the law as to the names of the parties: Walthour v. Spangler, 31 Pa. 523; Barnhill v. Haigh, 53 Pa. 165; Patton v. Ry. Co., 96 Pa. 169." And by the Act of May 4, 1864, P. L. 775, section 2, parties in equity proceedings are given the same right of amendment as in actions at law, when such will expedite justice. See Darlington's App., 86 Pa. 512;

Dick's App., 106 Pa. 589. If, therefore, Mrs. Cohen is an essential party plaintiff, it is no bar to the relief which Overholt and wife seek that she was not so joined.

The so-called standard mortgage clause, appellant concedes, creates in favor of the mortgagee a contract of insurance separate, distinct and independent from that constituted between the mortgagor and the insuring company by the other provisions of the policy: Reed v. St. Paul Fire & Marine Ins. Co., 67 Pa. Superior Ct. 110; Knights of St. Joseph B. & L. Assn. v. Mechanics & Fire Ins. Co. of Phila., 66 Pa. Superior Ct. 90; Trustee B. & L. Assn. v. Liverpool & London & Globe Ins. Co., Ltd., 93 Pa. Superior Ct. 242; Beaver Falls B. & L. Assn. v. Allemania Fire Ins. Co., 101 Pa. Superior Ct. 109 (reversed on another point, 305 Pa. 290, 157 A. 616); Clarke & Cohen v. Real, 105 Pa. Superior Ct. 102, 159 A. 451. This is the weight of authority: Couch, Insurance, section 1215 b; Syndicate Ins. Co. v. Bohn, 65 F. 165, 27 L. R. A. 614; 26 C. J. 85. The policy which defendant company originally issued was thus, in effect, two contracts: one being between Dora Cohen and the company insuring, against loss by fire, her interest in the property, the other being between the same parties but protecting plaintiffs' interest as mortgagee.

When the defendant company inquired through its agent whether the policy was to be renewed, this was an offer to make a new contract. In the absence of circumstances to indicate that a different meaning was intended, this meant a contract chronologically "new," but in *form* and *substance,* identical with the original; no other interpretation is reasonable and can be maintained. See Burson v. Fire Assn., 136 Pa. 267, 20 A. 401. If the company intended in the new policy to alter the terms of this old one, it should have made its intentions evident. When Mrs. Cohen accepted the offer as made, by instructing Hendricks to renew the policy and paying the premium therefor, the minds of the contracting parties met on a new policy identical in form and substance with the one

it superseded. The record does not disclose whether the alteration in the form of the policy was made at the time the original policy was first "renewed" or at some subsequent renewal date. This is inconsequential. The alleged failure of the company to comply with this contract gives rise to the present controversy.

The facts as above stated are as the chancellor found them. They are supported by evidence. We therefore accept them. Under them plaintiffs have made out a case entitling them to the relief prayed for. It is a recognized ground for reformation of a written contract that it does not conform to the terms of the oral agreement in pursuance of which the written contract was executed. In such cases the theory is that the writing does not express the undoubted intentions of the parties, that in drafting the instrument to express in permanent form these intentions there was a mistake made and that therefore the instrument should be *re*formed to *con*form to the intentions of those bound by it. See Restatement, Contracts, section 504. Defendant contends, however, that the record here does not present a case of mutual mistake because it never intended to issue a policy other than that which plaintiffs received. The facts and legitimate inferences from them negative this contention. The company entered into a contract "to renew the policy" and the conclusion is inescapable that the successively "renewed" policies were each to be identical with its prototype. Under such circumstances the company cannot excuse itself on the ground that it made no mistake, and reformation will be granted as if the mistake had been mutual. The rule is stated in section 505 of the Restatement of the Law of Contracts that "if one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein but knows what that intention is, the latter can have the writing reformed so that it will express that intention." See also Connecticut Fire Ins. Co. v. Wiggin-

ton, 134 Ark. 152; Palmer v. Hartford Fire Ins. Co., 54 Conn. 488; Hay v. Star Fire Ins. Co., 77 N. Y. 235; Cochran Cotton Seed Oil Co. v. Phœnix Ins. Co., 28 N. Y. S. 45.

Appellant further contends that it is now too late for plaintiffs to obtain equitable relief, that by their laches in failing to read the policies which they received they are barred from subsequently raising the point that the policy is improper in form. This contention we cannot accept. Plaintiffs read their original policy and found its provisions satisfactory. When thereafter they received a policy which appellant's agent sent to them as a renewal, they had a right to take it for granted that it *was* a renewal. See Burson v. Fire Assn. supra. They are not to be denied relief because they did not carefully read the policies which under the circumstances purported—at least to them—to be identical with the original policy, which they with good reason assumed to be the pattern of each of its successors.

Appellant further maintains that in finding that Dora Cohen remained at all times the real owner of the property, although the undisputed testimony showed that its title was conveyed to her daughter for the purpose of avoiding hazarding the property to the lien of a judgment, there was thereby foreclosed the exercise of the right of subrogation reserved by the standard mortgage clause; furthermore, it is contended such finding is an encouragement of fraudulent conveyances. What may be "encouraged" by the findings or decisions of courts belongs entirely in the realm of mental speculation and is of no concern in the instant case. As to the question posed by appellant based on the conveyance of title to Mrs. Cohen's daughter, our answer is: the contract made by the standard mortgage clause is entirely separate and distinct from that contained in the rest of the policy and since the insurance thereby created was only upon the interest of the mortgagees, and is payable to the mortgagees, it is quite immaterial whether Mrs. Cohen, who made that contract, was the real owner of the property

or not. Anyone might have taken out and paid the premium upon insurance protecting the mortgagees' interest and for their sole benefit. Whether Mrs. Cohen remained the owner of the property or not, it was appropriate for her to pay the premium, for by the mortgage bond upon which she remained liable she was obligated to pay the premiums for fire insurance to an amount equal to that of the mortgage. Since it was immaterial whether Mrs. Cohen was the real owner, the finding to that effect was not required, and will not therefore be res judicata in any other action between the parties for the determination of the question of the property's ownership: Bower's Est., 240 Pa. 388, 87 A. 711; Kellerman's Est., 242 Pa. 3, 88 A. 865; State Hospital v. Cons. W. S. Co., 267 Pa. 29, 110 A. 281.

The decree of the court below is affirmed at appellant's cost.